United States District Court
Southern District of Texas

**ENTERED**
July 15, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ABDAL JABER ALI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:26-cv-02269** |
| | § | |
| **MARTIN FRINK, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

## MEMORANDUM & ORDER

Before the Court is *pro se* Petitioner Abdal Jaber Ali's Amended Petition for Writ of Habeas Corpus (ECF No. 15) and Respondents' Renewed Motion for Summary Judgment (ECF No. 17). After considering the briefing and applicable law, the Court hereby **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus.  Respondents' Renewed Motion for Summary Judgment is **DENIED**. Petitioner's Request for Declaratory Judgment (ECF No. 18) is **DENIED AS MOOT**.

### I.    BACKGROUND

Petitioner Abdal Jaber Ali is a Palestinian native of the West Bank. ECF No. 7, Ex. 1. Mr. Ali entered the United States on November 1, 2014, on a nonimmigrant visa which expired on April 30, 2015. ECF No. 1, Ex. 4 (Notice to Appear). Mr. Ali overstayed his visa. *Id*. On February 8, 2018, Mr. Ali filed an affirmative application for asylum (Form I-589) with U.S. Citizenship and Immigration Services. ECF No. 7, Ex. 3 (Sheehan Decl.) at ¶ 7. This application was denied on April 5, 2018, and Mr. Ali was placed in removal proceedings before an Immigration Judge

(IJ). *Id*. at ¶ 8. These proceedings were dismissed without prejudice on September 21, 2023, on the parties' joint motion. *Id*. at ¶ 9.

On July 9, 2025, Mr. Ali was arrested by the Houston Police Department and charged with assault on a family member. *Id*. at ¶ 10. The Harris County District Court ultimately dismissed these charges on September 21, 2025. *Id*. at ¶ 12. Mr. Ali was remanded to the custody of Immigration and Customs Enforcement (ICE) the same day and issued a Notice to Appear in removal proceedings before an Immigration Judge. *Id*. On October 23, 2025, an Immigration Judge ordered Mr. Ali released from custody on a $15,000 bond. ECF No. 7, Ex. 6 (IJ Bond Order). However, Mr. Ali was unable to afford this bond at the time, and he therefore remained in custody.[1]

On February 6, 2026, the Immigration Judge issued a written decision ordering that Mr. Ali be removed to Palestine. ECF No. 7, Ex. 2. Petitioner did not appeal this decision to the Board of Immigration Appeals within the requisite 30 days, meaning that the removal order became administratively final on March 10, 2026. Sheehan Decl. at ¶ 13.

Mr. Ali filed his initial habeas petition with this Court on March 20, 2026. The Court held a hearing on the Petition on April 28, 2026, at which the Court denied Mr. Ali's habeas petition without prejudice as premature, and ordered the Government to update the Court as to the status of Petitioner's removal on June 10, 2026. *See* Minute Entry of April 28, 2026.

On June 10, 2026, Respondents filed a status update informing the Court that Mr. Ali remained in ICE custody and had not been removed from the United States. *See* ECF No. 14. On June 15, Petitioner filed the instant Amended Petitioner for Habeas Corpus. Mr. Ali has now been

---

[1] Petitioner, who is proceeding *pro se*, does not provide significant information in his Petition. However, the Court held hearings in this case in which Petitioner participated on April 27 and April 28, 2026, and clarified details such as this one with Mr. Ali.

in ICE detention for nearly ten months. He has been in post-removal order detention for just over four months.

## II.   DISCUSSION

Mr. Ali challenges "the indefinite nature of his detention" and argues that ICE is unable to remove him to the West Bank because of the ongoing conflict between Israel and Palestine. ECF No. 15 at 6. Mr. Ali asks the Court to order either "[his] immediate release. . . or [that ICE] deport [him] immediately." *Id*. at 7. Liberally construing Mr. Ali's *pro se* Petition, the Court understands Mr. Ali to argue that his detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231, as interpreted by the Supreme Court. Because the Court finds that there is "no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future," the Court will grant his petition for habeas corpus relief. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

In most circumstances, the Immigration and Nationality Act ("INA") allows the United States Government ninety days to remove a noncitizen following a final order of removal. 8 U.S.C. § 1231(a)(1). The Government may detain noncitizens during this ninety-day removal period. *Id*. The ninety-day period may be "extended . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.*  In this case, there is no allegation that Mr. Ali has failed to cooperate with the Government in facilitating his removal.

In *Zadvydas v. Davis*, the Supreme Court held that § 1231 authorized detention beyond the statutory removal period for only as long as removal was "reasonably foreseeable." *Zadvydas*, 533 U.S. at 699. The *Zadvydas* Court held that post-removal-order detention that extended beyond six months would be considered presumptively unconstitutional. *Zadvydas*, 533 U.S. at 701. After six months of detention, a noncitizen who presents good reason to believe that there is "no significant

likelihood of removal in the reasonably foreseeable future" must be released from custody unless the Government provides evidence sufficient to rebut that showing. *Id.* This is because "where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id*. at 690 (internal quotation marks omitted). Since the primary goal of detention under § 1231 is to ensure the appearance of noncitizens at future immigration proceedings, this justification "is weak or nonexistent where removal seems a remote possibility at best."[2] *Id*.

Mr. Ali has been detained pursuant to § 1231(a) since his removal order became administratively final on March 10, 2026—just over four months. His detention is therefore "presumptively reasonable" under *Zadvydas*. But "[t]his six-month presumption is not a bright line, . . . and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) (Ellison, J.); *see Clark v. Martinez*, 543 U.S. 371, 384 (2005) ("*Zadvydas* did not hold that [§ 1231] authorizes detention until it approaches constitutional limits; it held that. . . [§ 1231] authorize[s] detention only for a period consistent with the purpose of effectuating removal."). Just as the Government may overcome the presumption that detention beyond six months is unreasonable by showing that removal is reasonably foreseeable, so too may a noncitizen overcome the presumption that a shorter period of detention is reasonable by showing that detention is no longer consistent with the statutory purpose because removal is not foreseeable. *See, e.g., Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025) (noting that "nothing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed"); *Zavvar v. Scott*, No. CV 25-

---

[2] While preventing danger to the community is also a goal of § 1231, the Zadvydas Court noted that "preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Zadvydas*, 533 U.S. at 691.

2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025) (stating that six month presumption of reasonability "is rebuttable"); *Ali*, 451 F. Supp. 3d at 707 (holding that a three-month period of post-removal order detention was unreasonable because removal was no longer possible in the foreseeable future where petitioner's country of origin had closed its borders to international flights due to the COVID-19 pandemic).

The question now becomes whether Mr. Ali has shown that his removal is sufficiently unlikely that his detention is not reasonably related to effectuating removal. Given the ongoing conflicts in the Middle East and the general difficulty of effectuating removal of Palestinian nationals to Israeli occupied territory since October 7, 2023, the Court concludes that Mr. Ali has successfully rebutted the presumption that his continued detention is reasonable. *See Abuelhawa v. Noem*, 811 F. Supp. 3d 847, 860 (S.D. Tex. 2025) ("Suggestion of return in the reasonably foreseeable future of a Palestinian national to any of Jordan, Israel, or a Palestinian territory is objectively specious.").

The burden therefore shifts to the Government to demonstrate that Mr. Ali's removal is reasonably foreseeable. In support of this position, the Government points to the fact that Mr. Ali has a valid travel document (his Palestinian passport), that ICE "accomplished. . . 28 removals of Palestinian/Israeli nationals in fiscal year 2024," and that they anticipate normal flight scheduling to resume in the Middle East pursuant to the June 17, 2026 Memorandum of Understanding between the United States and Iran. *See generally* ECF No. 17, Ex. 1 (Zhang Decl.). The Court is unpersuaded. Although Mr. Ali possesses a travel document, this document is no guarantee that Israeli authorities will allow his removal. As the Government acknowledges, ICE must obtain a transit visa from Israeli authorities in order to remove a Palestinian national to the West Bank. Zhang Decl. at ¶ 14. ICE has not yet requested a transit visa for Mr. Ali, let alone provided any

information suggesting that one is likely to be granted. *Id*. Additionally, while the Government cites statistics showing that it successfully removed 28 "Palestinian/Israeli" nationals in 2024, these statistics do not differentiate between removals of Israeli nationals to Israel, which do not require a transit visa, and removals of Palestinian nationals to the West Bank, which are more complicated for obvious reasons. The Government has provided no data or other information regarding removals of Palestinian nationals to Israeli-occupied territory specifically. Finally, international developments since the Government filed its renewed response on June 24 demonstrate the ongoing challenges of accomplishing removals to the Middle East at this time. As of this writing, the United States has resumed strikes on Iran, raising serious doubts about the viability of deportation flights to Israel/Palestine in the foreseeable future.[3] In short, nothing that the Government has presented persuades the Court that Mr. Ali's removal to Israel/Palestine is reasonably foreseeable.

### III.   CONCLUSION

Under these circumstances, the Court concludes that there is no likelihood that Mr. Ali will be removed in the reasonably foreseeable future. His continued detention is therefore unreasonable under the INA and *Zadvydas*.

The Court therefore **ORDERS** as follows.

1. Respondents are **ORDERED** to release Petitioner from custody **within 48 hours**.

2. Respondents must release Petitioner in a public place within the Southern District of Texas, and must notify him of the time and place of his release **no less than three hours** prior.

---

[3] *See* Filip Timotija, *Trump formally informs Congress of Iran war resumption*, The Hill (Jul. 13, 2026, at 16:30 ET), https://thehill.com/policy/defense/5966415-trump-congress-resumes-strikes-iran/.

Petitioner must be given the opportunity to inform a friend or family member of the timing and location of his release.

3.  Respondents must return all personal property to Petitioner upon release, including all identity documents such as a social security card, Employment Authorization Document, driver's license, and/or passport.

4.  Respondents shall update the Court on the status of Petitioner's release on or before July 20, 2026.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on July 15, 2026.

Keith P. Ellison
United States District Judge